## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| |
|---|
| UNITED STATES OF AMERICA |
| |
| v. |
| |
| ZACHARY STOLOFF |

Docket No. 1:13-cr-10310-FDS

### DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

Defendant Zachary Stoloff , through his counsel, respectfully submits this memorandum and motion in conjunction with his sentencing scheduled for October 1, 2014.  His plea having been tendered pursuant to Fed. R. Crim. P. 11(c)(1)(C), Mr. Stoloff respectfully requests that this Honorable Court accept the terms and conditions of the plea agreement in this case and impose a sentence incorporating the same terms: incarceration of 120 months; a fine in the amount to be determined by the Court[1]; 5 years supervised release; a mandatory special assessment of $100; restitution as ordered by the Court; and an Order that he have no contact with the minor victim during the period of his incarceration and supervised release.  In light of the offense conduct as reflected in the PSR, Mr. Stoloff's personal history and background (and prompt acceptance of responsibility), and the joint agreement by the parties regarding the recommended sentence in this case, this sentence is consistent with the Sentencing Guidelines (and applicable range set forth in the PSR) and is "sufficient, but not greater than necessary" to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2).

---

[1] In so considering, the defendant respectfully requests that this Honorable Court consider ¶¶ 91 – 94 of the PSR filed in this case and determine the defendant is indigent and incapable of paying a fine.

## PROCEDURAL BACKGROUND

Mr. Stoloff was arrested by local law enforcement authorities in the town of Easton on August 24, 2013, and charged with one count of enticing a child under 16, pursuant to M.G.L. ch. 265 § 26C(b).  The minor victim in that case, and the underlying facts and circumstances supporting the state complaint, are the same as the core facts and circumstances supporting the indictment returned in this case.  While Mr. Stoloff was detained pending his arraignment in Taunton District Court on August 26, 2014, two state search warrants were executed in connection with his case: one at his Brighton apartment and a second for an iPhone 5 and iPod seized from his vehicle at the time of his arrest.

Mr. Stoloff posted $1,000 bail subsequent to his arraignment in state court and returned to his apartment.  He appeared again as required in Taunton for his initial pretrial conference. A second charge of enticing a minor child, involving the same minor victim, was added to the complaint against him.  Mr. Stoloff entered a plea of not guilty on the new charge and was released on the same conditions ($1,000 cash bail), after receiving bail warnings.

Mr. Stoloff was arrested without incident by federal authorities in his Brighton apartment on October 1, 2013, and charged via complaint with a single count of enticing/coercing an individual under 18 to engage in sexual activity.  Additional items were seized from his apartment at the time of his arrest.[2]

Mr. Stoloff's initial appearance was before the Honorable Leo Sorokin on October 1, 2013.  The government moved for detention.  A hearing was held on October 4, 2013, where probable cause was also found.  Mr. Stoloff was ordered detained pending trial and an indictment alleging a single count of coercion and enticement of a minor in violation of Title 18 U.S.C. §

---

[2] The original state charges were Nolle Prossed by the Bristol County D.A. subsequent to Mr. Stoloff's appearance in federal court in the instant case.

2422(b), and forfeiture, pursuant to 18 U.S.C. § 2428, was returned against him by a federal grand jury.  He signed a plea agreement with the government regarding both counts on June 17, 2014, pursuant to F. R. Crim. P. 11(c)(1)(c), and pleaded guilty before this Honorable Court on June 30, 2014.  There are no other cases pending against him and Mr. Stoloff has been detained in custody in this case since October 1, 2013, for a total of 365 days.

## ADVISORY GUIDELINES CALCULATIONS

U.S. Probation has calculated (in its PSR) an advisory guidelines imprisonment range of 108 – 135 months in this case.  These calculations are premised on a BOL of 28.  Three enhancements, totaling 6 additional points,[3] were applied for an AOL of 34.  After deducting 3 points for prompt acceptance of responsibility, Probation calculated his TOL at 31, resulting in an advisory sentencing range of 108 – 135 months.  However, because a conviction for 18 U.S.C. § 2422(b) requires a minimum term of incarceration of 120 months, the advisory guidelines range is increased to 120 – 135 months, because "the statutorily authorized minimum sentence of 10 years is greater than the minimum of the guidelines range."  The parties joint recommendation of 120 months is within the advisory range calculated by Probation.  Mr. Stoloff is not seeking any downward departure(s) or variance(s) in light of his written plea agreement with the government.

---

[3] U.S. Probation applied an additional 2 points for unduly influencing a minor to engage in sexual activity, under USSG § 2G1.3; a further 2 points for use of a computer to entice the minor to engage in prohibited sexual conduct, under USSG § 2G1.3(b)(3)(A); and a final 2 points under USSG § 2G1.3(b)(4)(A), because the offense involved the commission of a sex act.

**ARGUMENT**

A.      Applicable Law

Under *United States v. Booker*, 543 U.S. 220, 259 (2005), the sentencing guidelines are no longer mandatory.  The Sentencing Reform Act requires the Court to consider guidelines ranges, *see* 18 U.S.C. § 3553(a)(4), but permits it to tailor the sentence in light of other statutory concerns.  These concerns include reflecting the seriousness of the offense, promoting respect for the law, providing just punishment, affording adequate deterrence, protecting the public, and effectively providing the defendant with needed educational or vocational training and medical care.  18 U.S.C.A. § 3553(a).  Section 3553(a) further directs sentencing courts to consider the nature and circumstances of the offense; the history and characteristics of the defendant; the kinds of sentences available; the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.  *Id.*[4]

The sentencing court must compute the guidelines, which are the "starting point and the initial benchmark," but which may not be presumed reasonable.  *Gall v. United States*, 552 U.S. 38, 49-51 (2007).  Then, the court considers the parties' arguments, after which it makes an "individualized assessment based on the facts presented," considering all of the factors under 18 U.S.C. § 3553(a).  *Id*.  Ultimately, the sentencing judge must select a sentence within the

---

[4]   Under *Booker,* this Court may consider certain factors that are rejected or ignored by the guidelines.  Sentencing courts previously were forbidden from considering, inter alia, a defendant's history and characteristics to the extent that they involved his mental and emotional condition, U.S.S.G. § 5H1.3; his education and vocational skills, *id.* at § 5H1.2; drug or alcohol dependence, *id.* at § 5H1.2; socioeconomic status, *id.* at § 5H1.10; or lack of guidance as a youth, *id.* at § 5H1.12.  These factors can now support a sentence outside the guidelines.

statutory range that is "sufficient, but not greater than necessary" to satisfy the varied purposes of punishment identified by Congress.  18 U.S.C. § 3553(a); *see also* 18 U.S.C. § 3553(a)(1)-(2).

The First Circuit has summarized the central principles of the post-*Booker* and -*Gall* sentencing procedure described above:

> This sequencing necessitates a case-by-case approach, the hallmark of which is flexibility.  In the last analysis, a sentencing court should not consider itself constrained by the guidelines to the extent that there are sound, case-specific reasons for deviating from them.  Nor should a sentencing court operate in the belief that substantial variances from the guidelines are always beyond the pale. Rather, the court "should consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue."

*United States v. Martin,* 520 F.3d 87, 91 (1st Cir. 2008) (quoting *Gall*, 552 U.S. at 52).

In this case, a minimum sentence of 10 years is required by statute.  That minimum (120 months) is within the advisory range calculated in this case by the parties and Probation.  The parties concur it is the appropriate sentence for this defendant, on these facts.

B.    Under The Sentencing Reform Act (And By Agreement Of The Parties) 120 Months Is Sufficient But Not Greater Than Necessary To Comply With The Statutory Provisions Of 18 U.S.C. § 3553(a)

The §3553(a) factors generally include (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide the defendant with needed educational or vocational training or medical care, (3) the kinds of sentences available, (4) the kinds of sentence and the sentencing range established by the United States Sentencing Guidelines, (5) any pertinent policy statement, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar

conduct, and (7) the need to provide restitution to any victim of the offense 18 U.S.C. §3553(a).

Mr. Stoloff was born in Pasadena, California on August 17, 1984.  PSR at ¶ 56.  Mr. Michael Stoloff (his father) and Mrs. Shirley Roberts (his mother) were good parents, who made Mr. Stoloff's education a top priority.  *Id.* at ¶ 57.  They are aware of the instant offense, continue to be extremely supportive of him, and have been present at nearly all of his court appearances (including his arraignment, pre-trial conferences, and his change of plea hearing) despite having to fly from their home in California to attend them.  The extent to which his family will continue to be a support group for him subsequent to his release is evidenced by his Mother's willingness to try to find an apartment in the Boston area and be his live-in guardian/caretaker in connection with Mr. Stoloff's original request for release on conditions, including home confinement, during the pendency of this case.  That request was denied after a hearing.[5]

Before Mr. Stoloff was arrested, he was employed by the New England Sports Network ("NESN") in Watertown, Massachusetts "as an assistant editor to the New Media Department."[6] PSR at ¶ 84.  Before that, Mr. Stoloff held a series of jobs between 2005 and 2012 (as he was seeking higher education) in which he was mostly a freelance writer for musical performances

---

[5] Given this support group, coupled with supervised release, it is highly unlikely that Mr. Stoloff will recidivate, especially in light of the fact that he is a 30 year old offender with a criminal history score of 0.  *See* United States Sentencing Commission, *Measuring Recidivism: The Criminal History Computation of Federal Sentencing Guidelines* (2004) (hereinafter "Measuring Recidivism") at 12 ("Recidivism rates decline relatively consistently as age increases. Generally, the younger the offender, the more likely the offender recidivates. Exhibit 9 illustrates the age recidivism trend of the study sample. Among all offenders under age 21, the recidivism rate is 35.5 percent, while offenders over age 50 have a recidivism rate of 9.5 percent.").

[6] Mr. Stoloff's employment was terminated with NESN because of his arrest for the instant offense.  PSR at ¶ 84.

and sporting events.  *See Id.* at ¶¶ 85-90.  A letter from Mr. Stoloff's parents, Michael Stoloff and Shirley Roberts, with their personal reflections on his character, upbringing and personality, is attached hereto as Exhibit A.[7]  Fourteen additional letters from individuals who know Mr. Stoloff well, attesting to his character and integrity are attached hereto as Exhibit C.

Mr. Stoloff's educational background is solid, having received a Bachelor of Arts from the University of California at Santa Cruz and a Master's Degree in Journalism from Columbia University in New York.  *Id.* at ¶ 82.  He was apparently well-liked by faculty and staff at Columbia and was successful enough academically to be offered a job in New York by a former professor after his incarceration.  *Id.* at ¶ 84.  As a result, it appears Mr. Stoloff still has future prospects and the ability to be a productive citizen once he has paid his debt to society.  That he has hopeful prospects upon his release suggests any concerns about the possibility of recidivism are greatly reduced.  *See Measuring Recidivism* at 12 ("Exhibit 10 shows that those with stable employment in the year prior to their instant offense are less likely to recidivate (19.6%) than are those who are unemployed (32.4%)... Exhibit 10 [also] shows recidivism rates for offenders with different educational backgrounds.  Overall, offenders with less than a high school education are most likely to recidivate (31.4%), followed by offenders with a high school education (19.3%), offenders with some college education (18.0%), and offenders with college degrees (8.8%).").

The question of how someone from a loving family, with a solid educational background, who has bright employment prospects, and who had never before been in trouble with the law, could become involved in conduct such as underlies this case is a good one.  Although it does not excuse his behavior, nor does Mr. Stoloff seek to hide behind it, the substance abuse and mental health issues he was struggling with immediately prior to, and during the time of his

---

[7] Mr. Stoloff's parents have provided several of his published writings, as samples of his journalistic abilities for this Court's consideration.  They are attached hereto as Exhibit B.

criminal conduct, at least places it in context.  Mr. Stoloff reported to Probation that he "believed

he [initially] began to feel 'clinically depressed'" after college.  He further advised [Probation]

that he had intrusive negative thoughts which were a result of not having any future plans."  *Id.*

at ¶ 68.  Mr. Stoloff believes the source of his depression was that he had been unable to find

work after he received his undergraduate degree, and because his relationship with his girlfriend

during the final year of his undergraduate studies had ended.  His depression became worse

around the time of the offense conduct because, while he was employed by NESN, he did not

feel as though there was any prospect of advancement there.  His dreams of becoming a

successful writer were, to him, less and less likely to become a reality.  Mr. Stoloff also felt

lonely in Boston and was unable to find female companionship with a person his own age, the

last person with whom he had a romantic relationship having broken up with him five (5) years

prior.  Unlike his life in New York, Mr. Stoloff also had few male friends to spend time with

after he moved to Boston.  As a result, Mr. Stoloff "began to isolate himself and spend most of

his time online," in an attempt to quell his loneliness.  The extent of his depression is evidenced

by the fact he never unpacked his belongings after he moved to Massachusetts despite moving to

the area nearly a year ago before his arrest.[8]  *Id.* at ¶ 70.

    As for his substance abuse issues, Mr. Stoloff reported to Probation that, while "he began

experimenting with marijuana" in 2002, his use of it increased drastically to the point that "he

felt the need to smoke marijuana as soon as his work day ended as a stress reliever" while

working for NESN.  *Id.* at ¶¶ 75, 78.  He also drank alcohol (although rarely during 2012 and 2013) but

when he did, "he normally consumed more than he intended and there were times that it was probably

---

[8] Mr. Stoloff has attempted to address his depression while he was out on bail on the state charges that were
superseded by the instant charges.  He "attended four one-hour mental health counseling sessions with Dr. Roger
Gray in Newton, MA" between August 26 and October 10, 2013.  Moreover, he voluntarily agreed to submit to a
forensic psychiatric examination to determine his risk of recidivism and his potential for rehabilitation.  A copy of
that report, authored by Dr. Gray is provided to this Court in aid of sentencing under separate cover and seal.

dangerous for him to drink alcohol or smoke marijuana." *Id.* at 79.  This drug abuse ultimately contributed to his depression and isolation because it "kept him from spending time with friends and also from participating in physical exercise. *Id.* at 79.  Again, Mr. Stoloff recognizes that neither his substance abuse nor his depression excuses, by any means, the criminal behavior to which he has plead guilty; he is not using it to seek either a variance or a downward departure in this case.  Mr. Stoloff plead guilty because he knows what he did was wrong and unacceptable.  He is eager to receive mental health counseling, and pursue a life of sobriety through substance abuse counseling, to address these issues.  He simply brings these collateral issues to the Court's attention help inform this Honorable Court's decision considering whether to accept the Rule C plea the parties have agreed to.

Moreover, the 120 month sentence the parties have agreed to adequately satisfies § 3553(a)'s requirement that the sentence must be tailored "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  The base offense level for a violation of 18 U.S.C. § 2422(b) is determined according to U.S.S.G. § 2G1.3.  *See* PSR at ¶ 34. According to the United States Sentencing Commission, for the fiscal year of 2012 there were approximately 259 sentences imposed via § 2G1.3, nationally.  *See* Table 13G, Sentence Length in Selected Primary Sentencing Guidelines for Fiscal Year 2012 (available at http://isb.ussc.gov).  The median for those 259 sentences is 120 months, precisely what the parties have agreed to here (notably, violations of § 2422(b) result in the second lowest base offense level under § 2G1.3).  Given that the proposed sentence reflects the national median for FY 2012, it is respectfully submitted that "unwarranted sentence disparities among defendants" will be avoided by imposing the sentence jointly recommended by the parties.

Finally, the defendant respectfully submits that for a 30 years old trained journalist with a Master's Degree who has never been arrested and, before this, had never served a day in jail, 120 months (10 years) is a very significant sentence, as is the 5 years of supervised release that will follow.  He does not challenge its appropriateness.  To be sure, he is aware that his overall sentencing exposure is even higher than what is set forth in the Plea Agreement.  However, his willingness to accept so substantial a

sentence, which has had the effect of sparing the victim, the government, and his family the expense and anguish of a trial, not only underscores the sincerity of his contrition, but also manifests the appropriateness of imposing on him the sentence the parties have agreed to.

## CONCLUSION

Based on the foregoing, Mr. Stoloff respectfully requests this Honorable Court to accept the parties' Plea Agreement, sentence him to the agreed-upon prison term of 120 months, and order whatever penalties the parties have agreed to under the Plea Agreement.

Dated: September 25, 2014                    Respectfully submitted,

                                             ZACHARY STOLOFF

                                             By and through his attorneys,

                                              /s/ *R. Bradford Bailey*
                                             R. Bradford Bailey, BBO#549749
                                             BRAD BAILEY LAW, P.C.
                                             Four Longfellow Place, 35th Floor
                                             Boston, Massachusetts 02114
                                             Tel.:   (617) 227-2800
                                             Fax:    (617) 973-1562
                                             bbailey@dennerlaw.com

Certificate of Service

I, R. Bradford Bailey, hereby certify that on this, the 25th day of September 2014, I caused a true copy of the foregoing *Defendant's Memorandum in Aid of Sentencing* to be served upon all necessary parties by virtue of electronically filing the same via the CM/ECF system.

                                              /s/ *R. Bradford Bailey*
                                             R. Bradford Bailey