**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| v. | ) **CRIMINAL NO. 13-10310-FDS** |
| | ) |
| **ZACHARY M. STOLOFF,** | ) |
| **Defendant.** | ) |

## GOVERNMENT'S SENTENCING MEMORANDA

Now comes the United States, by its attorneys, Carmen M. Ortiz, United States Attorney, and Suzanne Sullivan Jacobus, Assistant U.S. Attorney, and hereby submits this Sentencing Memorandum. On June 30, 2014, defendant Zachary M. Stoloff ("Stoloff" or "defendant") entered a guilty plea to a one count indictment charging him with Coercion and Enticement of a Minor, in violation of 18 U.S.C. § 2422(b), with a date of offense of between on or about July, 2013, and on or about August 25, 2013, within the District of Massachusetts, and elsewhere.[1] Additionally, pursuant to 18 U.S.C. § 18 U.S.C. § 2428, there is also a criminal forfeiture allegation.

### I.   SENTENCING GUIDELINES/GUIDELINE CALCULATIONS

The United States Sentencing Guidelines are advisory, but they remain "the starting point and the initial benchmark" in sentencing. *Gall v. United States,* 552 U.S. 38, 49-50 (2007). The Guidelines must be properly calculated and considered, but ultimately the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C.

---

1 The defendant pled guilty to the charge via a plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C) (see docket entry # 51).

1

§ 3553(a). *Id*. at 49-50. Because each case is unique, the Court must make a particularized analysis of the nature and circumstances of the offense and the defendant's history and characteristics. 18 U.S.C. § 3553(a)(1). The Court must then impose a sentence that sufficiently reflects the seriousness of the crime, promotes respect for the law, and provides just punishment. 18 U.S.C. § 3553(a)(2)(A). The sentence should adequately deter criminal conduct, protect the public, and provide any necessary education, training or treatment. 18 U.S.C. § 3553(a)(2)(A)-(D). After determining the appropriate sentence, the Court should adequately explain its rationale to "allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall*, 552 U.S. at 50. The Court must also strive to "avoid unwarranted sentencing disparities among defendant's with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6).

The defendant faces a minimum mandatory sentence of 120 months and a maximum sentence of life imprisonment on count one (see United States Probation Officer's Presentence Report ("PSR") at ¶ 95). The parties have submitted a plea agreement to the Court and in it, have outlined the Guideline calculations which are consistent with the PSR (see docket # 51). The PSR correctly indicates that the Guidelines and statutory term of supervised release is 5 years to life (see PSR ¶¶ 100, 101, and 18 U.S.C. §3583(k)).

The United States Probation Office has determined that under USSG § 2G1.3(a)(3), the defendant's base offense level ("BOL") is 28; with a 2 level increase under USSG §2G1.3(b)(2)(B), because the defendant unduly influenced a minor to engage in prohibited sexual contact; an additional 2 level increase under USSG §2G1.3(b)(3)(A) because the offense involved the use of a computer to persuade, induce, entice, coerce, or facilitate the travel of, the minor to

engage in prohibited sexual conduct; and an additional 2 level increase under USSG § 2G1.3(b)(4) because the offense involved the commission of a sex act (see PSR¶¶ 34-37).  The resulting offense level would be 34 with a 3 level reduction for prompt acceptance of responsibility which results in a Total Offense Level ("TOL") of 31 (see PSR ¶¶ 41-45).  The PSR lists the defendant's criminal history category ("CHC") as I (see PSR ¶¶49-50) which the government agrees with. With a TOL of 31 and a CHC of I, the defendant's guideline sentencing range ("GSR") is 108 months to 135 months with a 10 year minimum mandatory sentence (see PSR ¶ 96).  The government agrees with the advisory sentencing guideline calculation set forth in the PSR and notes that this same calculation is also reflected in the plea agreement.

Defendant's guideline range reflects both the seriousness of defendant's conduct and the seriousness with which Congress and the Sentencing Commission view the sexual exploitation of minors.  A sentence within that range is necessary to account for the factors that the Court must consider under 18 U.S.C. §3553(a).

The United States respectfully requests that the Court accept the joint plea agreement and impose a sentence of 120 months incarceration followed by at term of five years of supervised release with specific conditions while on supervised release, forfeiture as determined by the court and as outlined in paragraph 10 of the plea agreement, including all computers and electronic equipment utilized by the defendant to commit the instant offense for which he now stands convicted,[2] restitution as determined by the Court, a fine to be determined by the Court, and a $100 mandatory special assessment.  Restitution is mandatory under the statute.  As part of the

---

2 Excluding a Macbook Pro laptop, bearing serial number C02GLWYMDV7L which, per the plea agreement, the United States has agreed to return to the defendant.

3

plea agreement, the parties request the following special condition be imposed for the duration of the defendant's incarceration and his period of supervised release:  no contact directly or indirectly with "Minor A".  Additionally, as a consequence of his conviction for these crimes, pursuant to the Sex Offender Registration and Notification Act and the laws of the Commonwealth of Massachusetts, the defendant is required to register as a sex offender and to keep that registration current, in the place where he resides, where he is employed, and where he is a student.

This joint sentence recommended by the parties is the mandatory minimum sentence for a conviction of this crime and would also be within the advisory guideline range as calculated by U.S. Probation in the PSR.  The government believes this recommendation is fair and reasonable and would adequately meet the sentencing objectives outlined in 18 U.S.C. §3553(a).  As such, the government urges this Court to adopt the joint recommendation.

**II.    DISCUSSION OF THE 18 U.S.C § 3553(a) FACTORS**

The factors to be considered under 18 U.S.C. § 3553(a) include the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, the need to deter the defendant and others, and the need to protect the public from the defendant's crimes.

**A.  Nature and Circumstances of the Offense**

The government urges the Court to consider the first §3553(a)(1) factor:  the nature and circumstances of the crime, and assess his crime first for what it is.  Zachary Stoloff is an intelligent, well-educated man who clearly knows right from wrong.  In support of his sentencing memorandum, the defendant attached multiple letters from family and friends (see docket # 68-1).  A common theme among those letters is the defendant's intelligence.  Prior to his arrest, he had

4

already earned a Bachelor's degree (with a double major) as well as a Masters Degree in journalism from Columbia University.   Yet, regardless of his intelligence, here, this 29 year old, sought out an eighth grader for purposes of sexual coercion and enticement and went even further by actually meeting in person with the fourteen year old, driving her back to his residence and engaging in sexual intercourse with this minor.   He is a contact offender.   His illicit internet activity with Minor A was neither occasional nor aberrant.

The facts of this case are extremely disturbing and merit a lengthy prison term, namely, the mandatory minimum sentence of ten years.   The defendant's stated intentions, to coerce and entice and ultimately engage in sexual intercourse with a minor female who he knew was only fourteen years old, are appalling.   The defendant chose to pursue his own sexual gratification with flagrant disregard for the welfare of this minor child.

When she was but 14 years old, and knowing that fact, Stoloff, who was more than twice her age at 29 years old at the time, enticed Minor A by meeting her on-line and engaging in sexually explicit chats with her to coerce her to meet with him.   When she did, Stoloff engaged in sexual intercourse with the 14 year old and afterwards, knowing it was wrong, he told her not to tell anyone.

By way of background, on August 24, 2013, fourteen year old Minor A and her father went to a police department in Massachusetts to report, among other things, that Minor A had been in contact with an adult man on the internet, later identified as Stoloff, and had been persuaded by him via text messages and via the computer to meet with him and engage in sexual intercourse. Minor A related that she met the defendant on-line through a website called Teenspot.com approximately one and one half months earlier.   On her Teenspot.com profile, Minor A listed her

5

age as fourteen and also posted pictures of herself.   After obtaining consent, law enforcement reviewed Minor A's Teenspot.com account and Minor A's age was listed as 14.   According to Minor A, Stoloff saw the pictures of her that she posted on her Teenspot.com account.

After meeting the defendant on-line and communicating with him via the internet, Minor A and Stoloff exchanged cell phone numbers and continued to communicate by texting, emailing and Skyping one another.   Minor A told authorities that she assigned "Zach2" to Stoloff's cell phone number in her cell phone.

Minor A indicated she had met "Zach2" in person on one occasion approximately several weeks prior to the date of August 24, 2013.   On that occasion, via interstate communications with the minor victim, Stoloff arranged to meet with her and he then traveled to Minor A's town in Massachusetts and drove her back to his Brighton, Massachusetts, residence where he engaged in sexual intercourse with her.   Stoloff then told Minor A that he had to get her back home because he had to work in the morning.   The defendant then drove her back to her town and dropped her off near her residence.   Additionally, Stoloff told the minor victim not to tell anybody because he would get into trouble and she agreed.   Minor A did not tell anyone at that time what occurred between she and Stoloff.   After that night, Minor A and Stoloff stopped communicating for a couple of weeks.

Based on a review of the minor victim's cell phone account, from as early as July 25, 2013, up to and including August 24, 2013, Stoloff and the minor victim were communicating via text messages.   Based upon a review of Stoloff's cell phone, from on or about August 18, 2013, through on or about August 24, 2013, in total, there are approximately 98 texts between the victim and Stoloff, which does not include any deleted messages.

6

Some of the text messages between the two are sexually graphic including on July 25, 2013, when Stoloff texted the victim that he couldn't wait to have sex with her when he texted her "ughhh not going to lie…cant wait to get inside you" [1:56:04 AM (UTC+0)][3]. That same date the two text one another about the fact that Stoloff is on his way to meet with Minor A.   In August 14-15, 2013, texts to the victim, Stoloff asked her "…so did you have fun with me" (11:41:53 PM[UTC+0]) and "…what part did you like the best?" (11:44:54 PM[UTC+0)]).   He then describes her private genital area in a sexually graphic way and tells her he "can't believe [he] didn't hurt [you] more than [I] did" (11:49:28 PM [UTC+0]).

Approximately one week prior to the August 24, 2013, date, Stoloff resumed contact with Minor A by texting her.   The following includes a sample of some of the texts sent from Stoloff to Minor A:

| | | |
|---|---|---|
| 8/18/13: | 3:17:58 PM[4] | so do you still want to fuck me again? |
| 8/18/13: | 3:26:33 PM | so you liked having me inside you?   What was your fav part? |
| 8/18/13: | 3:27:50 PM | did you like it when I actually fucked you? |
| 8/18/13: | 3:29:27 PM | so could you shave your legs and your pussy for me? |
| 8/18/13: | 3:30:56 PM | so when can you fuck? |
| 8/18/13: | 3:32:41 PM | maybe tonight…I'll let you know . . . |
| 8/18/13: | 4:00:25 PM | …did you like sucking my cock? |
| 8/18/13: | 4:03:24 PM | next time im going to cum in your mouth or on you face, ok |
| 8/22/13: | 10:32:19 PM | hey what are you doing? |
| 8/22/13: | 10:51:05 PM | wanna fuck maybe?   what time could you get out of your house? |
| 8/22/13: | 10:52:51 PM | heh… its ok we can do it another night, maybe this weekend |

---

3 Per USPIS, "UTC" stands for coordinated universal time which is a time scale.
4 Designated in military time

7

While Minor A and her father were at the police station the evening of August 24, 2013, law enforcement observed Minor A had received texts from "Zach2" (i.e., Stoloff) on her cell phone asking to meet with Minor A. Minor A agreed to assist law enforcement and responded to Stoloff via text and she texted him asking him to pick her up which he agreed to do. The two exchanged several text messages during which they arranged to meet at a specific location later that same evening. In those text messages, among other things, Stoloff asked the minor victim if she wanted to have sex (i.e., "are you doing anything? wanna fuck?"[23:02 PM]); asked her when she could get out of her house (23:10 PM); asked her if she would wear a short skirt (23:18 PM); asked her where she wanted to meet him and agreed to meet her at the same place where the two had previously met (23:31 PM); told her he was on his way (23:49 PM); told her to wear sexy panties that he was going to take off of her immediately (23:59 PM); and texted her that he would be there in approximately five minutes (00:36 AM).

Law enforcement placed unmarked vehicles in the area of the pre-arranged location where Minor A and Stoloff had agreed to meet. On Sunday August 25, 2013, at approximately 12:44 AM, Stoloff arrived at the pre-arranged location. At 12:48 AM, Stoloff sent a text message to Minor A with the following symbol: "?." Officers stopped Stoloff's motor vehicle and Stoloff was placed under arrest. Law enforcement observed a cellular phone (iPhone 5) located inside Stoloff's vehicle which was illuminated showing a text conversation between Stoloff and Minor A's name displayed. Stoloff was transported to the local police department. Stoloff was provided his rights pursuant to <u>Miranda</u> and signed a waiver of rights forms. At booking, Stoloff provided his Brighton, Massachusetts residence and also said he wanted to cooperate but refused to answer questions relative to his knowledge of the minor victim or what brought him to

Minor A's town.    Additionally, Minor A's first name was listed as a contact in Stoloff's cell phone.

Had he not been arrested, and at the very location where he had arranged to meet Minor A at again, there is little question that defendant would have continued to seek out this underage teenaged girl for additional inappropriate sexual relations.   Defendant took advantage of the vulnerabilities of a young teenage and stopped only because he was arrested.   He is precisely the sort of person Congress had in mind when it enacted § 2422(b), and when it increased that section's mandatory minimum penalty.

On August 26, 2013, two state search warrants were executed: one at Stoloff's Brighton residence and a second for the iPhone 5 and iPod that were seized from Stoloff's vehicle upon his arrest on August 25, 2013.    Stoloff was home at the time of the search warrant execution. Stoloff was the only resident of that apartment.    Computers, computer equipment, iPad, iPod, iPhone, hard drive, thumb drive, voice recorder, one box of condoms, three pairs of female child panties, an internet connection entitled "ForKiddiePornOnly" which was printed out on a piece of paper, as well as other items were seized.    Additionally, an on-site review of the defendant's computer revealed child pornography.[5]

Thereafter, a full forensic examination of all but one computer,[6] as well as computer equipment and cell phones, was conducted and revealed text messages between Stoloff and Minor A, as well as child pornographic images and a collection of child pornography dating back to

---

5 On October 1, 2013, Stoloff was arrested at his residence on a federal complaint.  Police seized a laptop (which was connected to the internet), a second laptop, an iPhone inside of his residence.

6 The MacBook pro was not examined and it to be returned to the defendant's parents.

approximately 2009. USPIS estimates hundreds of images of child pornography were recovered from the defendant's computer(s). In taking into consideration what an appropriate recommendation would be, in addition to the charged conduct, the government also factored in the uncharged child pornography images that were recovered from the defendant's lawfully seized electronic equipment.

Additionally, authorities recovered hundreds of Skype messages between the defendant and Minor A from the defendant's computer(s). Authorities also recovered Minor A's Teenspot.com profile page from the defendant's computer, including a partial image of Minor A's Teenspot.com photograph on the defendant's computer. Further, Stoloff had another photograph of the minor victim on his computer as well as a picture of himself with his penis exposed.

Two days after reporting the events to the police, the fourteen year old minor victim attempted to take her own life after she wrote a two page suicide note. Her parents discovered her, authorities were contacted and Minor A was transported to a hospital.

### B. History and Characteristics of the Defendant

The defendant's history and characteristics likewise warrant a lengthy sentence. In his interview with U.S. Probation, the defendant described a childhood absent of any abuse or neglect. See PSR ¶57. He indicated his parents' primary focus was on his education. He further stated he maintained a close relationship with extended family and that his parents did all of the right things in terms of raising him. See PSR ¶¶ 57-58. Relative to his educational background, in 2008 the defendant earned an undergraduate degree from the University of California at Santa Cruz and received a master's degree in journalism from Columbia University in 2012. See PSR ¶¶ 62, 82. His parents related to Probation that the defendant 'was an excellent student and was determined to

establish a career in journalism'.  See PSR ¶ 63.  At the time of his arrest on this case, the defendant was employed as an assistant editor to the New Media Department at NESN in Massachusetts.  See PSR ¶ 84.  Clearly the defendant is intelligent, yet instead of focusing his intelligence and skills solely on becoming a productive member of society, he chose to use his intellect to coerce and entice a fourteen year old minor victim into sexual activity to whet his own sexual appetite.  The defendant intended to impose a far different childhood upon Minor A than the childhood he experienced.

### C. A term of imprisonment of 120 months addresses the need for the sentence to reflect the seriousness of the offense, promote respect for the law, for the sentence imposed to afford adequate deterrence to criminal conduct, and to protect the public from future crimes of the defendant.

These factors address the specific containment, deterrent, and otherwise protective effect that the sentence is to have on the defendant and on society as a result.  A sentence of 120 months imprisonment accomplishes all of these goals.  The defendant's conduct is extremely serious and a 10 year sentence is very lengthy.  Stoloff used his intellect to prey upon the vulnerabilities of a mere fourteen year old Minor victim. A significant sentence is needed to account for this conduct, to promote respect for the law, and to provide just punishment.

The United States submits that this significant period of incarceration will appropriately serve as both a general and a specific deterrent to future conduct involving the exploitation of children.   A sentence of 120 months imprisonment reinforces, to the defendant and to others who are tempted to follow in his footsteps, that this crime is exceedingly grave in nature regardless of whether or not the victim involved is a real child, thereby promoting respect for the law and protecting the safety of the public.

### D. Impact on Minor Victim and her family

One cannot overstate the terrible impact the defendant's egregious actions have had on Minor A and Minor A's family. In short, it has caused them untold heartache. The government expects to address this more fully at sentencing.

### III. CONCLUSION

A sentence of 120 months, which is the mandatory minimum sentence that can be imposed on a conviction for this offense, and which is at the mid-range of the advisory sentencing guideline range, fairly reflects the factors to be considered under 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, the seriousness of the offense, the need to deter the defendant and others, and the need to protect the public from the defendant's crimes. A sentence within the advisory guideline range is an appropriate and reasonable sentence and the government would ask this Court to accept the plea agreement with this joint sentencing recommendation.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By: s/ Suzanne Sullivan Jacobus
Suzanne Sullivan Jacobus
Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

      This is to certify that I have this day served upon the following counsel of record a copy of the foregoing document via electronic filing to:

      Attorney R. Bradford Bailey
      Denner & Pellegrino, LLP
      4 Longfellow Place, 35th floor
      Boston, MA 02214

      s/ Suzanne Sullivan Jacobus
      Suzanne Sullivan Jacobus
      Assistant U.S. Attorney