1                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
2

3

4     UNITED STATES OF AMERICA,          )
                                         )
5                        Plaintiff,      )  Criminal Action
                                         )
6                                        )  No. 13-10310--FDS
      vs.                                )
7                                        )
      ZACHARY STOLOFF,                   )
8                        Defendant.      )

9

10    BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV

11

12                          SENTENCING

13

14

15          John Joseph Moakley United States Courthouse
                         Courtroom No. 2
16                      One Courthouse Way
                        Boston, MA 02210
17

18                       October 1, 2014
                          2:08 p.m.
19

20

21

22

23                     Valerie A. O'Hara
                     Official Court Reporter
24     John Joseph Moakley United States Courthouse
                One Courthouse Way, Room 3204
25                     Boston, MA 02210
                  E-mail: vaohara@gmail.com

1    APPEARANCES:

2    For The United States:

3        United States Attorney's Office, by SUZANNE SULLIVAN
     JACOBUS, ASSISTANT UNITED STATES ATTORNEY, 1 Courthouse Way,
4    Suite 9200, Boston, Massachusetts  02110;

5    For the Defendant:

6        Denner Pellegrino LLP, by R. BRADFORD BAILEY, ESQ.,
     Four Longfellow Place, Suite 3501, 35th Floor,
7    Boston, Massachusetts  02114.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

<u>PROCEEDINGS</u>

1

2       THE CLERK:  All rise for the Honorable Court.  This is

3  Criminal Matter 13-10310, United States of America vs.

4  Zachary Stoloff, the Honorable F. Dennis Saylor presiding.

5  Court is now in session.

6       Counsel, please identify yourselves for the record.

7       MS. SULLIVAN:  Good afternoon, your Honor,

8  Suzanne Sullivan on behalf of the United States.

9       THE COURT:  Good afternoon.

02:08PM 10       MR. BAILEY:  Good afternoon, your Honor, Brad Bailey

11  for Zachary Stoloff, who is present at counsel table.

12       THE COURT:  Good afternoon.  Please be seated.  This

13  is the sentencing in this case.  Before we go any further, I

14  believe that I deferred acceptance of the plea agreement under

15  Rule (c)(1)(c) and I now accept that agreement, and we can

16  proceed to sentencing, and I will sentence the defendant in

17  accordance with the agreed upon and binding sentence.

18       I have received and read the pre-sentence report as

19  revised through September 23rd, the plea agreement, the

02:08PM 20  defendant's sentencing memorandum, which included a variety of

21  letters and attachments from family members and supporters, the

22  government's sentencing memorandum, and I think that was it.

23       To my knowledge, no other materials have been

24  submitted to the Court, and I don't believe I received a victim

25  impact statement.  Is there anything else I should have seen

1       that I have not, Ms. Sullivan?

2               MS. SULLIVAN:  No, your Honor.

3               THE COURT:  Mr. Bailey?

4               MR. BAILEY:  Your Honor, there was a forensic

5       psychiatric evaluation that this Court has provisionally

6       accepted for 14 days under seal.  My client was given his Lamb

7       Warnings in connection with that being shared with the

8       government and also with this Court.  I've discussed both this

9       Court's thoughts about that and also the implications with my

02:09PM 10      client, and while there is sort of a disconnect between the

11      Lamb Warnings and placing something under seal, as I

12      understand, by the same token, it's sort of done in the

13      interest of encouraging continued psychiatric care and

14      treatment, however, my client has told me that if it's this

15      Court's intention to unseal that, he does not object to it.

16              THE COURT:  All right.  Two things.  First off, I did

17      read that, and I should have listed it, but I read it in

18      connection with the sealing motion, so I didn't mention it

19      inadvertently.

02:10PM 20              As far as the sealing and unsealing issue goes, I'm

21      expressing no view one way or the other, just under *Kravitz* my

22      understanding it should be as limited as necessary under the

23      circumstances.  It might be that the document might reveal the

24      name of the provider, and, you know, when the visits took

25      place, maybe, you know, what kind of tests were performed, if

1    any, were performed and then, you know, redacting the final

2    analysis or private information.  I don't know.  I don't know

3    the answer to that, which is why I gave counsel 14 days to

4    think about it because I don't want to be out of line with what

5    the First Circuit told me what to do, but I did read that as

6    well, and I want to include that.

7         MR. BAILEY:  Thank you.

8         THE COURT:  All right.  Mr. Bailey, I know you've read

9    the pre-sentence report.  Have you gone over it with

02:11PM 10    Mr. Stoloff?

11         MR. BAILEY:  We have, your Honor.  We have no

12    objections, although we did suggest some biographical changes.

13    I understand that they were submitted a little bit late, but we

14    appreciated probation at least acknowledging what those were,

15    but in terms of arithmetic or calculations, there are no

16    objections.

17         THE COURT:  All right.  Mr. Stoloff, is that correct,

18    you've gone over the PSR with your counsel?

19         THE DEFENDANT:  Yes.

02:11PM 20         THE COURT:  All right.  And my understanding is that

21    additional information was provided untimely, but I think it

22    ought to be corrected, and I'll direct probation to make the

23    necessary corrections.  It is in the nature of biographical

24    information, and there are no objections that require

25    resolution for sentencing.

1       All right.  Ms. Sullivan, are there any victims

2   present who wish to be heard?

3       MS. SULLIVAN:  There are not, your Honor, under the

4   Victim Rights Act pursuant to 18 U.S.C., Section 3771(a), we

5   have notified the minor victim and her family of today's

6   sentencing.  I have two postal inspectors that are present.

7   One has been in regular contact with that family, and they have

8   ultimately decided not to attend today's sentencing.

9       THE COURT:  All right.  How does the government or how

02:12PM 10   do the parties intend to deal with the issue of restitution?

11       MS. SULLIVAN:  If I can have a moment to speak to

12   Mr. Bailey?

13       THE COURT:  Yes.

14       MS. SULLIVAN:  Your Honor, to date we have not

15   received documentation from the minor victim or her family

16   relative to restitution, however we are aware that she has

17   undergone some treatment after disclosure of this information.

18   I've communicated this to Mr. Bailey.  It would be the

19   government's objective if and when we do receive something to

02:13PM 20   submit it to the Court for the Court's review, however I will

21   point out to the Court that there are stand-alone defendants at

22   present here in the Federal Court in Boston, two are before

23   your Honor, and the third is before Judge O'Toole.

24       They have been listed in the PSR as well as their

25   docket numbers, so if we do receive any documentation, we would

1    submit it, and we'd be requesting joint and several

2    restitution.  I don't know whether we will.  We have notified

3    the family of that, and we haven't received anything at this

4    point.

5             THE COURT:  All right.  It's not clear to me whether

6    it can be joint or several, which is a legal question.  I

7    express no opinion on it, but why don't we handle it this way.

8    As I understand it, restitution is mandatory, but I don't need

9    to decide the issue now.  Why don't I defer that issue, and

02:14PM 10   I'll set a timetable for reporting back to the Court how the

11   parties expect to proceed.  Would that work?

12            MS. SULLIVAN:  Thank you very much.

13            MR. BAILEY:  Yes, your Honor.

14            THE COURT:  All right.  With that, let me turn to the

15   guideline calculations.  The base offense level is 28, there

16   are three two-level adjustments as set forth in the PSR based

17   on influencing a minor to engage in sexual conduct, use of a

18   computer to entice a minor and commission of a sexual act

19   itself.  That brings us to a level 34.  There is a three-level

02:14PM 20   reduction for acceptance of responsibility on government

21   motion, Ms. Sullivan?

22            MS. SULLIVAN:  Yes.

23            THE COURT:  All right.  The motion is granted.  That

24   brings us to a Level 31.  His criminal history score is 0, his

25   criminal history category is I, the guideline range would be

1    108 to 135 months, but under the statute, there's a 10-year

2    mandatory minimum, and so the range is 120 to 135 months.  The

3    supervised release range is five years to life, the fine range

4    is $15,000 to $150,000, restitution is required, and the

5    special assessment is $100.  Is there any correction or

6    objection to that calculation?

7         MS. SULLIVAN:  No, your Honor.

8         MR. BAILEY:  No, your Honor.

9         THE COURT:  All right.  With that as our starting

02:15PM 10   point, and I have, of course, as I indicated, accepted the

11   Rule 11(c)(1)(c) plea, but let me hear from the government.

12   Ms. Sullivan.

13        MS. SULLIVAN:  Thank you, your Honor.  Your Honor, the

14   government submitted its sentencing memorandum outlining the

15   reasons why we believe the 10-year sentence is appropriate in

16   the case against Zachary Stoloff.  The victim in this case at

17   the time was a 14-year-old, eighth-grader, middle school

18   student who met Mr. Stoloff online through a teenspot.com

19   profile.

02:16PM 20        The two then exchanged phone numbers.  They began a

21   series of text messaging and various forms of Internet

22   communication over the period of approximately two months, from

23   approximately June 25th until August 25th of 2013.  There was

24   approximately 98 messages that were text messages between this

25   14-year-old and the then 29-year-old Zach Stoloff, and that

1    does not include any deleted message.

2         The impact that this crime has had on this victim and

3    her family cannot be understated.  Simply said, your Honor, two

4    days after this 14 year-old and her father went to the police

5    department in her local town to report what had happened, she

6    tried to take her life.

7         She wrote a two-page suicide note.  She took a variety

8    of different pills, and her parents found her and transported

9    her to a local hospital.  In her note, among other things, she

02:17PM 10    indicated, "I just don't want to face high school knowing the

11    torture I might go through.  I took pain killers so it wouldn't

12    hurt.  It hurts like hell."

13         Those were her words, your Honor.  I have had a chance

14    to meet with this young lady, and she has had regular contact

15    by the United States Postal Inspector Services, who have been

16    the lead agency involved in this case once the minor and her

17    family went to the local police department.

18         The defendant took responsibility for his crimes in

19    this case by pleading guilty on June 30th of 2014 before, your

02:17PM 20    Honor, on the one count of coercion and enticement.  In

21    fashioning what we believe was an appropriate sentence for the

22    Court's consideration, we took into consideration a variety of

23    different factors, including how many times the two of them

24    actually met.

25         In this case, there was, as I say, a series of

1    Internet communications between the two of them that ultimately

2    culminated in the defendant leaving his apartment in Brighton,

3    driving to this minor victim's town, arranging to meet with her

4    at a location near her home but outside of it, drove her back

5    to his home in Brighton and engaged in sexual intercourse with

6    this young woman.

7         Zach Stoloff is clearly an intelligent individual, and

8    that seems to be corroborative by the variety of different

9    letters of support that the defendant has submitted to the

02:18PM 10   Court for your review and consideration in determining an

11   appropriate sentence, but with that, I would suggest to the

12   Court, comes something that's very clear.

13        Zach Stoloff knew exactly what he was doing, he knew

14   who he was doing it to and he knew who he was manipulating, a

15   14 year-old vulnerable young girl, a girl that he was twice the

16   age of, and when he did this, in addition to the fact that he

17   has a master's degree from Columbia and an undergraduate degree

18   from a school in California and letters of support from a

19   variety of different friends and family members, we have an

02:18PM 20   individual that knew what he was doing because after he engaged

21   in sexual intercourse with this young girl, he told her not to

22   tell anyone, and she agreed at the time, and he then drove her

23   back to the location near her home, dropped her off and then

24   left, and the two of them stopped communicating for a couple of

25   weeks over this approximately two-month period of time, and

1    then he resumed communication with her.

2          But for the fact that the defendant was arrested the

3    very same night that this 14 year-old girl went to the local

4    police department to report what had happened, I'd suggest to

5    the Court that Zach Stoloff would have met with this young girl

6    a second time because he continued to text her, and she, with

7    cooperating with the law enforcement, texted him back.

8          He drove down to the same area that was a prearranged

9    location where the two of them were supposed to meet, and when

02:19PM 10    she wasn't there, he texted her a question mark.  Well, instead

11    of this 14 year-old, law enforcement was there, and they

12    stopped Mr. Stoloff who was alone in the car.  He was placed

13    under arrest without incident.  In his car was his cell phone

14    and another electronic device.  He had the victim's contact

15    information illuminated on his phone, and this is a man that

16    was focused on this young girl.

17          Looking at the 3553(a) factors, which I've outlined in

18    my sentencing memo, your Honor, the nature and the

19    circumstances of the crime are one of the most important.  I

02:20PM 20    would suggest to the Court that the defendant preyed on the

21    vulnerabilities of a young girl.

22          We've also learned, and the Court is aware from the

23    sentencing memorandum and the information that's contained in

24    the PSR relative to the offense conduct, the explicit, the

25    sexually-graphic chats that this defendant had with this young

1    girl.  He knew what he was doing, he knew what he was saying,

2    he was describing what he wanted to do to her sexually, what he

3    wanted her to wear, where she should meet him, what he wanted

4    her to do to him.

5           When the state search warrant was executed at the

6    defendant's apartment on August 23rd, in addition to computers

7    and other electronic equipment that were located there, there

8    were three pairs of female child panties that were found there,

9    there was an Internet connection entitled, "For Kiddie Porn

02:21PM 10    Only" that was printed on the piece of paper.

11           A forensic examination revealed that there was texts

12    between the defendant and the victim on his electronic

13    equipment, Skype messages, child pornographic images and a

14    collection of child pornography dating back to 2009.  The

15    forensic analysis estimated that there was hundreds of child

16    pornographic images.

17           The defendant had a photo of this young girl on his

18    computer, a picture of himself with his penis exposed, the

19    victim's teenspot.com profile page, which specifically says

02:21PM 20    that she's 14 years old, and it also included on his computer,

21    at least, a partial image of the victim's teenspot photo that

22    was found on his computer.

23           I say all this, your Honor, because these are factors

24    that we took into consideration when we thought we could make a

25    recommendation to the Court that we thought that was just, that

1  was fair, that was appropriate and that would also meet the

2  3553(a) factors.  The government believes that the 10-year

3  sentence that we jointly recommend this Court to accept is fair

4  and just and reasonable and appropriate.

5      Under the 3553(a) factors, I also indicated in the

6  sentencing memorandum that we thought that it should reflect

7  the seriousness of the offense and promote respect for the law,

8  in addition, to protect the public from future crimes of the

9  defendant.

02:22PM 10      A 10-year sentence is extreme, it's very long.  It's

11  also a minimum mandatory sentence for this type of conviction,

12  for this type of offense.  Congress established the minimum

13  mandatory sentence for this type of offense, and I'd suggest

14  did so rightly because this is a very serious offense, and it

15  carries serious consequences but not only to the defendant but

16  to the victim or victims that are involved in the case.

17      A sentence of 120 months will serve as both a

18  deterrent to Zach Stoloff and a deterrent to other defendants

19  or potential defendants that may be thinking of or being

02:23PM 20  involved with exploiting children.  Such a sentence would

21  reinforce to Mr. Stoloff and to others that this crime is

22  grave, it's serious, and the consequences are likewise grave

23  and serious.

24      As I said, at the outset, your Honor, this has had a

25  lasting impact on the minor victim, so much so that she tried

1    to take her life.  The defendant's prompt plea in this case

2    spared this case from going to trial, which in this case meant

3    it spared the government from putting on a now 15 year-old

4    girl, but the impact has been widespread.

5         We asked whether or not the victim and her family

6    wanted to submit an impact statement to the Court for your

7    review prior to today's sentencing.  I will tell the Court, as

8    I informed Mr. Bailey earlier today, that the family did submit

9    an impact statement for one of the companion defendants that

02:23PM 10   will be scheduled for sentencing before your Honor in a few

11   weeks.

12        After that one was submitted, we asked the inspectors,

13   postal inspector, to reach out to the family if they wanted to

14   submit one to the Court for Mr. Stoloff, and the father of this

15   14 year-old victim had indicated that that was one of the most

16   difficult things that he had to do when he prepared the impact

17   statement relative to a companion defendant and didn't know if

18   he could do it as it relates to this.

19        I will tell you that the postal inspector spoke with

02:24PM 20   the father of this young girl last week, and he did indicate

21   that he had sent one and mailed one but we had not received one

22   by the time I came down to court today, so I don't have one for

23   the Court, but I thought that it was important to at least make

24   sure that the Court is aware that this has had a dramatic

25   impact, although I know the Court doesn't have actually a

1    written word or spoken word from a member of this family that's

2    before the Court.

3        For the reasons that I've outlined in my sentencing

4    memorandum and for the reasons I've had an opportunity to speak

5    briefly to the Court today, I'd suggest to the Court that the

6    joint recommendation that is contained in the plea agreement is

7    one that's appropriate in this case.

8        I'd ask the Court to impose it.  In addition to the

9    120-month sentence, as the Court is aware, we're asking for a

02:25PM 10   period of five years of supervised release, the mandatory

11   special assessment, forfeiture as set out in paragraph 10 of

12   the plea agreement, and, in addition, your Honor, the parties

13   have jointly agreed that the defendant shall have no contact

14   directly or indirectly with this minor victim who's identified

15   as Minor A throughout these proceedings and in the indictment

16   itself, both during the period of Mr. Stoloff's incarceration

17   and the period of his supervised release.

18       As outlined in the plea agreement, in addition, your

19   Honor, the defendant understands and agrees that as a

02:25PM 20   consequence of his conviction for the coercion and enticement

21   case that he has now pled guilty, he will be required to

22   register as a sex offender and to keep that registration

23   current.  For those reasons, I would ask the Court to impose

24   the sentence that both parties have agreed to, and I thank the

25   Court for its time.

1          THE COURT:  Thank you, Ms. Sullivan.

2          Mr. Bailey.

3          MR. BAILEY:  Thank you, your Honor.  And in large

4     part, I echo what the government has said here.  It's not often

5     that I stand before this Court or other Judges in this

6     courthouse on a joint recommendation.

7          This joint recommendation was the product of numerous

8     discussions with the government.  The government was open and

9     up front with their evidence, shared it with me as requested.

02:26PM 10     I in turn shared it with my client.

11          From the first time I met him, my client expressed

12     shame, he expressed disappointment in what he had done and

13     disappointment in himself, disappointment in who he had let

14     down, including his family who have come here from California

15     and have been present and supportive from the start, and he has

16     expressed from the outset remorse in terms of the victim

17     herself, and when he was told about this suicide attempt, he

18     was quite emotional about it.

19          In short, he came in from the start contrite,

02:27PM 20     apologetic and was already thinking about being held

21     accountable for his actions.  I will not reiterate much of the

22     substance of my 10-page sentencing memo.  This Court has

23     indicated the 22 letters of support, which I think do speak

24     volumes that notwithstanding these charges that my client has

25     that type of support and that many people believing in him and

1    clearly the redemptive qualities that he shows and that he

2    exhibits.

3            There is no doubt that my client accepted

4    responsibility early.  He did it because he wanted to spare the

5    victim the turmoil of a trial.  He wanted to spare this Court

6    and the government the costs of a trial.  He wanted to spare

7    his family the pain of hearing the facts of this trial, and he

8    wanted to be held accountable and to proceed to the sentencing

9    phase, and the fact is he had already come to this place and to

02:28PM 10   this decision in a void knowing that he would be facing at

11   least 10 years or 120 months in prison, which then became the

12   subject of my discussions with the government in this case.

13           I did have him forensically evaluated.  We've had some

14   discussions about that, and you've heard his position on not

15   opposing the unsealing of that report in light of him having

16   received Lamb Warnings but in light of this Court's issues with

17   the sealing to begin with.

18           That report was not presented as a psychiatric

19   defense, nor was it presented as any type of round- bout

02:29PM 20   diminished capacity, downward departure.  It was presented for

21   two reasons:  Number 1, it was presented to attempt the

22   unexplainable that I'm not really sure there is an explanation

23   for; and, Number 2, to show that my client wants to understand

24   at the end of the day what possessed somebody with the

25   incredibly bright future that he had to commit acts that for

1    which there's no excuse.

2           Yes, there is sort of a base line evaluation that I

3    think gives him and his family something to work with in the

4    future.  Yes, there are references to depression and substance

5    abuse, but my client wants this Court to know and the

6    government to know and the victim to know that he does not

7    consider those excuses for his conduct.

8           He will continue to seek counseling going forward.  He

9    has found it helpful.  He immediately went into counseling when

02:31PM 10    he was out pending bail when this was initially in the state

11    system, but I think at the end of the day, your Honor, when you

12    are looking at a 29 year-old when arrested, a 30 year-old now,

13    who has never before been arrested, had never before his brief

14    detention when the state was handling this case spent a day in

15    jail, a 10-year sentence is an extremely long sentence, and

16    when you consider it's followed by five years of tight

17    monitoring by the U.S. Department of Probation and on top of

18    that what is likely to be a minimum 10 years of sex offender

19    registration, which will ultimately be determined in terms of

02:32PM 20    the terms and conditions by the State of California, this is

21    all what he has accepted.

22           I believe that that shows contrition, I believe that

23    that shows a sincere apology.  I think that also shows

24    redeeming value in Mr. Stoloff, all of which I'd ask the Court

25    to take into account in accepting this joint recommendation of

1    120 months of five years' supervised release.  We've had the

2    restitution issue.

3        I think if you look at his assets and liabilities as

4    calculated for his net worth in the probation department, I

5    don't believe he's in a position to pay a fine unless it's a

6    part of whatever work he's doing within the Bureau of Prisons.

7        Probation does suggest that he is a candidate for the

8    ADAP program, the 500-hour program.  I would suggest that's an

9    order.  I know this Court can't bind or order the Bureau of

02:33PM 10   Prisons.  I would ask this Court to consider asking them to

11   think about it or to recommend it, but I don't recall what this

12   Court's policy is on that, and I would suggest, again, that

13   this was a joint agreement and a very serious sentence that was

14   agreed to by my client for all the reasons set forth, not the

15   least of which was to spare the young woman from the emotional

16   difficulties and trials and tribulations of actually having to

17   be a witness at trial.  Thank you, your Honor.

18        THE COURT:  Mr. Bailey, while we're on the subject of

19   judicial recommendations, I would recommend that he serve his

02:34PM 20   sentence at a facility near normally I would say Boston, but I

21   understand his family is from California.  Do you want me to

22   make that recommendation so he's in that part of the country?

23        MR. BAILEY:  I wasn't sure I needed to make that

24   because Bureau of Prisons likes to try to keep someone within

25   500 miles of home.

1          THE COURT:  I wouldn't count on that happening.

2          MR. BAILEY:  I would specifically request to the

3     extent that they can that it would be nearer to his home in

4     Glendora, California.

5          THE COURT:  What is Glendora near, Los Angeles?

6          MR. BAILEY:  Los Angeles.

7          THE DEFENDANT:  Pasadena.

8          THE COURT:  That may or may not work, but my

9     understanding is the recommendation will at least hold some

02:34PM 10     weight in that regard.

11          MR. BAILEY:  Thank you, your Honor.

12          THE COURT:  Mr. Stoloff, do you wish to address the

13     Court before I impose sentence?

14          THE DEFENDANT:  I do.  I don't know if there's any way

15     I can say this that comes off not sounding cliche', but I'm

16     deeply sorry for first and foremost the victim in this case and

17     her family.  I have caused an unfathomable amount of harm to

18     them and a lot of strife that nobody should ever have to go

19     through, and that is because of me, and I am deeply, deeply

02:35PM 20     regretful.  It is something I think about a lot.

21          Secondly, I want to apologize to my family who, quite

22     frankly, deserved better from me.  A couple years ago, my dad

23     said, hey, you know, if anything happens to me, please take

24     care of your mom.  Of course, I said yeah, of course, and it's

25     something I think about every day that, you know, I may not be

1    able to make good on that agreement, and it kills me.

2           And, third, I would like to apologize to the Court and

3    the United States.  One of the things that's impressed upon me,

4    you know, during my incarceration over the last year is that a

5    lot of the people I've been incarcerated with, you know, come

6    from really difficult backgrounds and have led really hard

7    lives, and I have not.

8           I have had basically every advantage you could ask for

9    from childhood up to now, and so, I mean, so I apologize for

02:36PM 10   basically being a burden on this system.  You know, I needed to

11   do better, and I promise to do better in the future, and I'm

12   ready to be sentenced.

13          THE COURT:  All right.  Thank you, Mr. Stoloff.  All

14   right.  I am, as I indicated, going to impose the agreed upon

15   sentence.  I'm not sure what else to say under the

16   circumstances, I guess, except to say that my heart goes out to

17   the victim and to her family, Mr. Stoloff, to your parents.

18   They are victims of this as well.

19          I think Mr. Bailey said it best perhaps, this is

02:37PM 20   unexplainable.  I won't try to explain or even understand what

21   has happened here, but, Mr. Stoloff, you've made some bad

22   choices.  You're going to pay a very steep penalty for this,

23   but you are an intelligent and capable individual who is

24   capable of contributing to society when your punishment is

25   over, and I hope some day you get to that point, and I hope

1    your parents are there to see it.

2         All right.  I'm going to formally state the sentence

3    that I'm going to impose followed by a formal statement of the

4    reasons.  As is typical in this case, we have some very lengthy

5    conditions of supervised release involving various forms of

6    treatment and testing and computer restrictions.

7         Mr. Bailey, I understand that you and the defendant

8    were provided with a draft copy of those; is that correct?

9    The reason I'm asking is whether I can summarize those

02:38PM 10   conditions as opposed to reading them aloud.

11        MR. BAILEY:  Ms. Picozzi tells me that I was, and I

12   don't doubt Ms. Picozzi that I was provided with a copy of

13   that.

14        THE COURT:  In that case, just to be clear, I'm going

15   to read them rather than summarize them, and I should say in

16   advance one of the things that we struggle with.

17        MR. BAILEY:  Your Honor, I'm sorry, they are in the

18   PSR.  We had received them.  We did receive them.  I thought it

19   was a separate submission.

02:39PM 20        THE COURT:  All right.  In that case, I will summarize

21   them.  The precise terms are going to written in the judgment,

22   but because they are lengthy, I think I will summarize them,

23   and I know that Mr. Stoloff is certainly capable of

24   understanding them.

25        One of the things we struggle with in these types of

1    cases is providing for appropriate computer restrictions and

2    monitoring and attempting to look forward in the future as

3    technology changes.  I'll state as a general proposition that

4    the intent here is to have appropriate controls and monitors

5    over the defendant's use of a computer in the future without

6    crippling him and making him unable to function in the modern

7    world, unable to communicate or hold a job, and those are

8    subject to modification, either by assent or with intervention

9    of the Court, if necessary, and I guess the broader point is

02:40PM 10   the idea is not to set that in stone.  They may we will be out

11   of date by the time they kick in, but to have again appropriate

12   restrictions while permitting the defendant the ability to live

13   and work and function in a modern society.

14           All right.  With that, would the defendant please

15   stand.  Pursuant to the Sentencing Reform Act of 1984 and

16   having considered the sentencing factors set forth at 18 United

17   States Code, Section 3553(a), it is the judgment of the Court

18   that the defendant, Zachary M. Stoloff, is hereby committed to

19   the custody of the Bureau of Prisons to be imprisoned for a

02:41PM 20   term of 120 months.

21           The Court makes a judicial recommendation that the

22   defendant participate in the Bureau of Prison residential drug

23   abuse program due to the defendant's substance abuse history

24   and based on the informal prescreening performed by probation.

25           The Court makes a further judicial recommendation that

1    the defendant be designated to an institution commensurate with

2    security where the defendant can participate in sex offender

3    treatment, and the Court makes a judicial recommendation that

4    the defendant be designated to an institute commensurate with

5    security as close as possible to his family home in Glendora,

6    California.  I had written Pasadena.

7          Upon release from imprisonment, the defendant shall be

8    placed on supervised release for a term of five years.  Within

9    72 hours of release from custody of the Bureau of Prisons, the

02:42PM 10    defendant shall report in person to which the defendant is

11    released.

12          While under the probation office's supervision, the

13    defendant shall comply with the following terms and conditions:

14          The defendant shall not commit another federal, state

15    or local crime and shall not illegally possess a controlled

16    substance.

17          The defendant shall refrain from any unlawful use of a

18    controlled substance.

19          The defendant shall submit to one drug test within 15

02:42PM 20    days of release from imprisonment and at least two periodic

21    drug tests thereafter, not to exceed 104 tests per year as

22    directed by probation.

23          The defendant shall submit to the collection of a DNA

24    sample as directed by probation.

25          The defendant shall comply with the standard

1    conditions that have been adopted by the Court, which are set

2    forth at Section 5D1.3C of the Sentencing Guidelines and which

3    will be set forth in detail in the judgment.

4        The defendant shall be subject to 16 additional

5    conditions which will be set forth in the judgment.  I'm going

6    to summarize them.

7        The first is that the defendant is prohibited from

8    possessing a firearm, destructive device or other dangerous

9    weapon.

02:43PM 10       Next, the defendant is not to consume any alcoholic

11   beverages.

12       Third, the defendant is to participate in a program

13   for substance abuse counseling which may include testing, not

14   to exceed 104 drug tests per year to determine whether he's

15   reverted to the use of alcohol or drugs.

16       The next is that the defendant is to participate in a

17   mental health treatment program as directed by probation.

18       The next condition is that the defendant shall

19   register as a sex offender within three business days from his

02:43PM 20   release.

21       The defendant will keep that registration current in

22   any jurisdiction where he resides, is employed or is a student

23   and shall change his registration within three business days

24   after changing his name, residence, employment or student

25   status.

1          I specifically want to advise the defendant that

2     failure to do so is itself a federal crime and may result in a

3     term of imprisonment.

4          Next, the defendant shall participate in a sexual

5     specific evaluation or sex offender specific treatment program

6     conducted by a sex offender treatment provider as directed and

7     approved by probation.

8          That may include testing, including polygraph testing.

9     While submitting to a polygraph, the defendant will not waive

02:44PM 10    his Fifth Amendment rights, and his exercise of such rights

11    will not give rise to a violation proceeding, however the

12    result of polygraph examinations may be considered in adhering

13    to modify release conditions or could initiate a separate

14    investigation.

15         The next condition, the defendant shall not possess or

16    use a computer, Internet-capable device or similar electronic

17    device or have access to any online service without the prior

18    approval of probation.

19         Next, the defendant shall allow probation to install

02:45PM 20    monitoring equipment on any computer or Internet-capable device

21    except one that is owned by his employer and not located in his

22    residence.  The purpose of that and the intention of that is to

23    identify for probation if the defendant views or downloads or

24    transmits any images or content of a sexual or inappropriate

25    nature, and the defendant, of course, shall not remove or try

1   to defeat those systems and shall allow probation reasonable

2   access to examine the computer.

3   The defendant shall advise anyone living in household

4   that any computer may be subject to monitoring.

5   Next, the defendant is not to possess or use a

6   computer or internet-capable device or similar electronic

7   device without the prior permission of probation, and, again,

8   probation must approve any use by the defendant of a chatroom

9   or sending or receiving instant messages or e-mails, and the

02:46PM 10   defendant shall not access child pornography or use any

11   sex-related telephone services, websites or electronic bulletin

12   boards.

13   The defendant shall disclose all account information

14   relative to Internet access, social networking and e-mail,

15   including user names and passwords to probation and shall

16   provide information concerning software, hardware on his

17   computer to probation.

18   Next, the defendant shall provide probation with any

19   requested financial information for purposes of monitoring his

02:47PM 20   computer use, including credit card bills and the like.

21   The defendant shall have no direct or indirect contact

22   with children under the age of 18 except in the presence of a

23   responsible adult who is aware of the nature of his background

24   and current offense and who has been approved by probation.

25   Next, the defendant shall consent to a third-party

1       disclosure to any employer or potential employer concerning any

2       computer-related restrictions that are imposed on him.

3               The defendant shall not be employed in any capacity

4       that may cause him to come in direct contact with children

5       except under circumstances approved in advance by probation.

6               The defendant shall not participate in a volunteer

7       activity that causes him to come in direct contact with

8       children, and contact includes electronic as well as

9       face-to-face communication.

02:47PM 10              Next, the defendant shall not accept any form of

11      employment without seeking the approval of probation which

12      would give probation an opportunity to assess the level of risk

13      depending on the child that he has.

14              And, finally the defendant shall not have any direct

15      or indirect contact with the victim in this case identified as

16      Minor A.

17              Again, that's a summary of the special conditions.

18      The precise terms will be laid out in the judgment, and they're

19      all intended again to assist the defendant and also to monitor

02:48PM 20      his activity on a going forward basis, and it is ordered that

21      the defendant shall pay the United States a special assessment

22      of $100, which shall be due immediately.

23              I will defer imposition of an order of restitution,

24      and I will grant the government's motion for a preliminary

25      order of forfeiture.

1          You may be seated.  In terms of the formal reasons for

2   the sentence, it is a guideline sentence imposed pursuant to

3   the mandatory minimum sentence and a binding plea agreement

4   under Rule 11(c)(1)(c).  I think the terms of supervised

5   release are appropriate in order to ensure adequate

6   supervision.  I'm imposing no fine given the defendant's

7   financial resources, and to the extent he has access to any

8   resources, they should go toward any restitution obligation,

9   and the special assessment is mandatory.

02:49PM 10          Do counsel have any correction or addition to that

11   sentence not previously raised, counsel?

12          MS. SULLIVAN:  Just one, your Honor.

13          THE COURT:  Yes.

14          MS. SULLIVAN:  For clarification, the no contact

15   directly or indirectly with Minor A is during the pendency of

16   incarceration and period of supervised release pursuant to the

17   plea agreement?

18          THE COURT:  Okay.  Yes, correct, I will make that

19   clear in the judgment.  Mr. Bailey.

02:49PM 20          MR. BAILEY:  We have no corrections or objections,

21   Judge.

22          THE COURT:  All right.  The sentence is hereby imposed

23   as stated.  There was a waiver of appeal; is that correct?

24   Yes.  Mr. Stoloff, I understand that in all likelihood you have

25   waived your right to appeal your conviction and sentence under

1        the plea agreement.  I'm nonetheless going to give you your

2        advise of rights about your right to appeal.  I'm not doing

3        that to confuse you, but I'm doing it as a precaution in case

4        for some reason the waiver of rights does not apply or it's not

5        effective, and you should consult with Mr. Bailey to see

6        whether or not that's true.

7              So if you've not waived it, you can appeal your

8        conviction if you believe that your guilty plea was unlawful or

9        involuntary or if there was some other fundamental defect in

02:50PM 10       the proceeding that has not been waived.  If you've not waived

11       it, you may have the right to appeal your sentence,

12       particularly if you think the sentence was contrary to law.  If

13       you're unable to pay the costs of appeal, you may ask

14       permission to have those costs waived and appeal without pain,

15       and you must file any notice of appeal without 14 days after

16       the entry of judgment.  If you request, the clerk will

17       immediately prepare and file a notice of appeal on your behalf.

18             Again, I understand you've in all likelihood waived

19       any right you may have to an appeal.

02:51PM 20             Is there anything further, Ms. Sullivan?

21             MS. SULLIVAN:  No, thank you.

22             THE COURT:  Mr. Bailey?

23             MR. BAILEY:  No, your Honor, thank you.

24             THE COURT:  Thank you, and, again, Mr. Stoloff, as I

25       said, you're paying a very heavy penalty here, but you are an

1    intelligent person, and I do hope at the end of this long

2    process that you will again be a contributing member of

3    society, and in that respect I wish you the best.  All right.

4    Thank you.  We'll stand in recess.

5              THE CLERK:  All rise for the Honorable Court.

6              (Whereupon, the hearing was adjourned at

7    2:51 p.m.)

8

9              C E R T I F I C A T E

10   UNITED STATES DISTRICT COURT )

11   DISTRICT OF MASSACHUSETTS ) ss.

12   CITY OF BOSTON )

13              I do hereby certify that the foregoing transcript,

14   Pages 1 through 31 inclusive, was recorded by me

15   stenographically at the time and place aforesaid in Criminal

16   Action No. 13-10310--FDS, UNITED STATES OF AMERICA vs.

17   ZACHARY STOLOFF and thereafter by me reduced to typewriting and

18   is a true and accurate record of the proceedings.

19              Dated this 12th day of November, 2014.

20                        s/s Valerie A. O'Hara

21              _____

22                   VALERIE A. O'HARA

23                   OFFICIAL COURT REPORTER

24

25